IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| TINA S. TIPSORD,<br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social<br>Security,<br>    Defendant. | )<br>)<br>)<br>)   Case No. 21-cv-03018<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Administrative Law Judge's ("ALJ") Decision denying Plaintiff Tina Tipsord's claims for Disability Insurance Benefits ("DIB") under section 216(I) and 223(d) of the Social Security Act and Supplemental Security Income ("SSI") benefits under Sections 1611 and 1614 of the Social Security Act, 42 U.S.C. Sections 416(I), 423, 1381(a), and 1382(a). Before the Court is Plaintiff's Motion for Summary Judgment (Doc. 12) and Defendant's Motion for Summary Affirmance (Doc. 19). For the reasons that follow, the ALJ's decision is affirmed.

### I.    PROCEDURAL HISTORY

On August 7, 2014, Plaintiff applied for DIB and SSI alleging disability as of June 15, 2012. (R. 12). Plaintiff was 46 years old on the alleged onset date (R. 647). Plaintiff's claims were initially denied on November 13, 2014, and upon reconsideration on June 5,

2015. (R. 12). On June 24, 2015, Plaintiff filed a Request for Hearing before an ALJ. (*Id.*). On October 18, 2016, a video hearing was held before ALJ David W. Thompson, who found Plaintiff was not disabled, issuing his unfavorable decision on March 20, 2017. (R. at 9-12). Plaintiff then appealed to the United States District Court for the Central District of Illinois (R. 643; Doc. 13 at 2).

On March 23, 2018, while her appeal was pending before the United States District Court for the Central District of Illinois, Plaintiff subsequently filed a claim for Title XVI disability benefits and was found disabled as of that date. (R. 653). While on appeal before the Central District of Illinois, Plaintiff and Defendant filed a Joint Motion for Remand. (*See* Civil Action No. 2:18-cv-02127-EIL Doc. 21). On April 2, 2019, United States Magistrate Judge Eric Long granted that motion and remanded the matter to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g). (*See* Civil Action No. 2:18-cv-02127-EIL Doc. 22).

On September 17, 2019, the Appeals Council issued an Affirmation Order affirming Plaintiff's disability as of March 23, 2018, and remanded for further adjudication for the period of June 15, 2012 (Plaintiff's alleged onset date) to March 23, 2018. (R. 653). On February 7, 2020, a remand video hearing occurred before ALJ Kathleen Kadlec, who issued an unfavorable decision on February 20, 2020. (*See* R. 650-77). On November 12, 2020, the Appeals Council denied Plaintiff's request for review of ALJ Kedlec's decision, thus rendering a final administrative decision of the Commissioner. (R. 643). On January 12, 2021, Plaintiff filed this action under 42 U.S.C. § 405(g). (Doc. 1).

## II.    LEGAL STANDARD

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. § 416.920. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520.

The court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Where substantial evidence supports the ALJ's disability determination, the court must affirm the decision even if "reasonable minds could differ concerning whether [the claimant] is disabled." *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (*quoting Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court considers the ALJ's opinion as a whole and the Seventh Circuit has said it is a "needless formality to have the ALJ repeat substantially similar factual analyses" at different sequential steps. *Rice v. Barnhart*, 384 F.3d 363, n.5 (7th Cir. 2004). The task of a court is not to reweigh

evidence or substitute its judgment for that of the ALJ. *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). A reviewing court does not "resolve conflicts or decide questions of credibility." *L.D.R.*, 920 F.3d at 1151.

### III.  ANALYSIS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment from June 15, 2012 through March 23, 2018. (R. 658). At step two, the ALJ determined Plaintiff suffered from multiple severe impairments prior to March 23, 2018: degenerative disc disease of the lumbar spine, bipolar disorder, anxiety disorder, posttraumatic stress disorder, and migraines. (*Id.*). At step three, the ALJ ruled Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 prior to March 23, 2018. (R. 659-61). Before turning to step four, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could operate foot controls, climb ramps and stairs, stoop, kneel, crouch, and crawl occasionally, but never ladders, ropes, or scaffolds. She could never work at unprotected heights, but could work around moving mechanical parts, operate a motor vehicle, and be in vibration occasionally. She could perform simple, routine tasks, make simple, work-related decisions, and interact with coworkers, supervisors, and the public occasionally with no more than a moderate limitation in the "paragraph B" criteria domains.

(R. 661-74). At step four, the ALJ found Plaintiff could not perform any past relevant work prior to March 23, 2018. (R. 674). At step five, the ALJ determined, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed prior to March 23,

2018, including: Assembler (DOT #706.684-022), with approximately 65,000 jobs nationally; Hand Packer (DOT #753.687-038), with 84,000 jobs nationally; and Inspector (DOT #529.587-018), with approximately 90,000 jobs nationally. (R. 675). The ALJ ultimately concluded Plaintiff had not been under a disability defined in the Social Security Act, from June 15, 2012, through the date of her decision. (R. 677).

Plaintiff requests judicial review of the ALJ's Decision, arguing the Decision contains errors of law and is not supported by substantial evidence. (Doc. 13). Specifically, Plaintiff argues for reversal or remand stating: (1) the ALJ hampered Plaintiff's cross-examination of the vocational expert ("VE"); (2) the ALJ did not address Plaintiff's post-hearing briefs; and (3) the ALJ improperly relied on the VE's testimony at step five concerning the number of jobs Plaintiff could perform. (*Id.*).

1. **The VE's Cross-Examination**

Plaintiff argues the ALJ twice improperly interrupted her cross-examination of the VE before she was finished asking her questions. (Doc. 13 at 4-5). Plaintiff appears to suggest the ALJ intentionally cut off the VE from answering any questions regarding her job number estimate methodology. (*Id.*). However, upon examining the record, it is evident Plaintiff's claim is entirely unfounded.

Indeed, in this case, the ALJ did interject two times during Plaintiff's cross-examination of the VE. (R. 722-24). In the first instance, the ALJ interrupted the cross-examination to clarify a question Plaintiff was attempting to pose to the VE. *Id.* Upon the ALJ's clarification and the VE's answer, Plaintiff's counsel actually thanked the ALJ for intervening, stating: "Well, thank you, Your Honor, because you clearly got an answer to

the question." (*Id.* at 723). It is unclear why the Plaintiff now views this act as an improper infringement on her legal right to cross-examine. (Doc. 13 at 4-5).

In the second instance, the ALJ interrupted the cross-examination to state the VE was not required to explain why she did not check her methodology in a different manner. (R. 722-24). Plaintiff cites *Wallace v. Bowen*, 869 F.2d 187, 194 (3rd Cir. 1989), for the assertion that the ALJ's interruption "could have unfairly affected the ultimate result" of Plaintiff's DIB and SSI appeal. (Doc. 13 at 5). Plaintiff would have the Court believe the Third Circuit held that an interruption by the ALJ automatically results in a remand to the Secretary to allow for continued cross-examination. (*Id.*) However, Plaintiff takes this quotation out of context.

In *Wallace*, the ALJ stated he heavily relied upon a medical report of a consulting physician who was not subject to cross-examination. *Wallace*, 869 F.2d at 194. The Third Circuit stated "[u]nder these circumstances, we conclude the reliance upon evidence adduced outside of a hearing without the opportunity for cross-examination could have unfairly affected the ultimate result." *Id*. In this case, the ALJ merely informed the VE that she was not required to explain why she did not check her methodology in a different manner. (R. 724). Moreover, unlike the ALJ in *Wallace*, the ALJ in this case did not rely on evidence acquired outside of Plaintiff's hearing that was not subject to the Plaintiff's cross-examination. (R. 650-77).

Plaintiff also cites *Skaggs v. Astrue*, No. 4:08-cv-0192-DFH-WGH, 2009 U.S. Dist. LEXIS 68911, at *8 (S.D. Ind. Aug. 6, 2009) for the proposition that a DIB and SSI complaint should be remanded when the record shows that "a busy and impatient ALJ cut off

counsel's inquiries" as to critical issues in the case. (Doc 13 at 5.) In that case, a review of the record showed numerous interruptions by the ALJ during the cross-examination of the VE, which the district court remanded for a new hearing. *Skaggs*, 2009 U.S. Dist. Lexis 68911 at *1; *4-8). This case is easily distinguishable from *Skaggs*. Namely, the ALJ here interrupted the VE's cross-examination two times: once to clarify Plaintiff's question and once to tell the VE she was not required to explain why she did not check her methodology in a certain manner. (R. 722-24). These two interruptions did not deprive Plaintiff of the opportunity for meaningful cross-examination. As such, the ALJ's decision is not subject to reversal on this point.

### 2. Step Five Inquiry

Plaintiff argues the ALJ improperly relied on the VE testimony at step five concerning the jobs available in the national economy Plaintiff could perform. (Doc 13 at 5-15). In response, Defendant argues the VE's testimony provided the ALJ with a sufficiently reliable foundation to conclude that significant jobs were available for Plaintiff to work. (Doc. 19-1 at 2-8).

VE's regularly rely on the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") job classification system because the Social Security Administration regulations authorize the agency to take administrative notice of reliable job information from the DOT. *See* 20 C.F.R. § 404.1566(d)(1). The DOT divides jobs into groups and describes specific job titles within each group. *Case v. Kijakazi*, No. 22-2379, 2023 U.S. App. LEXIS 19693, at *4 n.1 (7th Cir. Aug. 1, 2023). The DOT, however, does not provide estimates of the number of positions that exist in the national economy for each job title.

*Id.* In that situation, VE's will rely on the United States Bureau of Labor Statistics' Occupational Employment Statistics (OES), which provides annual employment estimates for 800 occupations. *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023). OES employs a different classification system from DOT called Standard Occupational Codes ("SOC"). *See Chavez v. Berryhill*, 895 F.3d 962, 965-66 (7th Cir. 2018). SOC sort jobs into broad occupational categories which encompass multiple DOT job titles. *Ruenger v. Kijakazi*, 23 F.4th 760, 762 (7th Cir. 2022). This process can be challenging for VE's when calculating job number estimates. Because of this matching problem, when VE's calculate job number estimates, they must convert the information from the OES, which uses the SOC system, into the DOT system. *Fetting*, 62 F.4th at 337.

A court reviews the ALJ's decision under the substantial evidence standard, which is not a high threshold. 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1154. It requires only enough "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154. With respect to a vocational expert's testimony about job prevalence, "the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." *Chavez*, 895 F.3d at 968. Thus, the expert's explanation of the methodology she used to produce her estimate must be "reasoned and principled" enough to instill some confidence that the estimate was not "conjured out of whole cloth." *Ruenger*, 23 F.4th at 763 (quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)).

In this case, the VE testified about jobs which are prevalent in the national economy that a hypothetical claimant could perform with various restrictions. (R. 707-

30). The VE also testified about the work available to someone with Plaintiff's age, experience, and physical limitations, and then posed hypothetical examples of a worker with Plaintiff's limitations. (*Id.*). The VE testified that some combinations of these limitations reflect "no more than a moderate limitation" and would allow the hypothetical person to perform jobs which exist in the national economy in significant quantities. (R. 709). For example, this hypothetical claimant could perform jobs such as: assembler (65,000 positions available), hand packer (84,000 positions available), and inspector (90,000 positions available). (R. 709-10). The VE concluded all of the available positions were unskilled, SVP 2, and light in physical demand. (R. 710). The ALJ posed another hypothetical, reducing the exertional level to sedentary. (*Id.*). The VE testified there were still jobs available in the economy at the unskilled, sedentary level, including hand packer (20,000 available positions), assembler (18,000 available positions), and inspector (17,000 available positions). (*Id.*).

Before turning the VE over for cross-examination, the ALJ questioned the VE about the methodology she used to arrive at the available job estimates that Plaintiff could perform. (R. 711-13). The VE testified she first used her education, training, and experience, including providing direct job placement services and labor market research for the past 25 years, as well as OccuBrowse, Job Pro, and SkillTran. (*Id.*). The VE affirmed that she started with the census data, which breaks jobs down by exertional level and skill level. (*Id.*). She then cross-checked that data in SkillTran. (*Id.*). The VE explained the results she obtained from SkillTran were results extrapolated from imputed hypotheticals considering variables such as skill, physical demand levels, and postural and height

requirements. (*Id.*). The VE then testified that SkillTran does not address variables such as contact with coworkers and the public, thus she applied her experience and education to differentiate with the environment for which an induvial would be working to arrive at her job number estimate conclusion. (*Id.*).

On cross-examination, Plaintiff's counsel questioned the VE about her estimates and asked her to explain her methodology. (*See* R. 719-29). Specifically, Plaintiff's counsel inquired whether SkillTran software begins its operation by commencing with SOC and OES codes before subsequently assigning job estimates to a corresponding DOT title. (*See* R. 719-20). Upon this questioning, and clarification by the ALJ, the VE confirmed that she entered Plaintiff's RFC into SkillTran, which produced several DOT codes, which she then cross-checked with the SOC based on the U.S. Census data. (*See* R. 721-24). Plaintiff's counsel further probed the VE on the reliability of SkillTran. (R. 725). The VE stated that SkillTran utilizes information from the Department of Labor, as well as the U.S. Census Bureau and the DOT and ONET – a government publication. (R. 725-27). Upon the conclusion of Plaintiff's counsel's cross-examination of the VE, the ALJ asked the VE whether she knew of other VE's that used SkillTran in their practices, to which the VE answered she did not. (R. 727).

In her Motion for Summary Judgment, Plaintiff contends the VE did not establish her estimates of job prevalence were the product of a reliable method. (*See* Doc. 13 at 6-15). Plaintiff primarily takes issue with the VE's methodology explanation relating to how many DOT codes were within an SOC, as well as her use of SkillTran, arguing it is not a well-accepted method for estimating available jobs. (*Id.* at 9-16). Plaintiff argues neither

the VE nor the ALJ had access to any explanation on how the VE's job estimates were arrived at from her use of SkillTran. (*Id.* at 11).

As the Seventh Circuit has explained, there is a mismatch between DOT codes and OES data because they both use different classification schemes. *See Chavez*, 895 F.3d at 965-66. As a consequence, VE's must employ some analytical method to match DOT job categories with OES data to determine the number of available jobs for a social security claimant. *Id.* The inability of the VE to precisely explain the software's algorithms does not render her explanation unreliable. *See Fetting*, 62 F.4th at 339 (vocational expert not required to a use a market study, computer program, or publication to make his calculations); *see also Case v. Kijakazi*, No. 22-2379, 2023 U.S. App. LEXIS 19693, at *9 (7th Cir. Aug. 1, 2023) (finding the VE's testimony was reliable, even though the VE's explanation of SkillTran did not provide a detailed breakdown of the specific mechanics and statistical model used). Here, the ALJ discussed Plaintiff's objections to the VE's methodology, but explained she nonetheless found the VE's testimony reliable. (R. 676).

The Court finds much guidance in *Case*, 2023 U.S. App. LEXIS 19693.[1] There, the VE utilized SkillTran, in addition to his experience, to estimate the availability of jobs in the national economy based on government survey data. *Id.* at *4. When cross-examined, the VE was unable to describe the allocation factors or mathematical formulas that SkillTran used to arrive at the DOT numbers. *Id.* Ultimately, the ALJ in that case found

---

[1] While the Seventh Circuit's Order in *Case* is not precedent, the court considers the strong alignment of facts and the compelling reasoning presented by the Seventh Circuit persuasive on the issues presented.

the VE's testimony reliable and denied the plaintiff's disability claim, which was affirmed by the district court. *Id.* at *5-6. On appeal, the Seventh Circuit held that the ALJ was entitled to conclude that both the VE's use of SkillTran and his professional experience produced reliable job number estimates. *Id.* at *9-11. Specifically, the Seventh Circuit affirmed the ALJ's reliance on the VE's estimates because the ALJ conducted a deeper inquiry into the VE's methodology before relying on it. *Id.*

Similarly, the ALJ in this case conducted an in-depth inquiry into the VE's methodology before relying on it. When cross-examined, the VE testified that her estimates were not only the product of SkillTran, but also of her prior labor market research and her 25 years of experience placing individuals with limitations in the workforce. (R. 711-13). The VE testified she first used the census data, which produces occupations by exertional and skill levels, before checking those produced occupations against individual DOT codes in SkillTran. (R. 712). She checked those results against individual DOT codes in SkillTran. (*Id.*). She also explained that SkillTran extrapolates based on the imputed hypothetical person's RFC including physical demand levels, postural levels, heights, and skill levels. (*Id.*). The VE also limited the desired industries and applied the exertional and non-exertional limitations from the hypothetical person including occasional postural, ladders, ropes, scaffold, ramps, stairs, and foot controls. (R. 722). Because SkillTran does not address contact with coworkers or the public, the VE testified that she used her education and professional experience to further reduce the job estimates to include these limitations. (R. 711-12). She checked her job estimates against

the numbers she received using the proportionate distribution method under the SOC codes, and testified the results were close. (*Id.*).

When asked what makes SkillTran reliable, the VE explained that it utilizes data from the Department of Labor, as well as the United States Census Bureau and the OES – the same information that the VE herself, as a professional, relies on in her practice. (R. 25). As such, it was proper for the ALJ to conclude that both the VE's use of SkillTran, coupled with her experience and labor market research, produced sufficiently reliable estimates. *See Biestek*, 139 S. Ct. at 1152-53 ("When offering testimony, the experts may invoke not only publicly available sources but also information obtained directly from employers and data otherwise developed from their own experience in job placement or career counseling.") (internal quotation marks and citation omitted).

Plaintiff, however, is correct that the Seventh Circuit has questioned the source and accuracy of the number of jobs that a VE testifies a claimant can perform in the national economy, because there is no official source of number of jobs for each DOT classification. *Ruenger*, 23 F.4th at 761 (the DOT was last revised thirty years ago, leaving many of its job descriptions outdated); *Chavez*, 895 F.3d at 966 (since 2008, the Social Security Administration has been working on a project to replace the DOT with an updated publication—a development this court continues to invite); *see also Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015). In *Alaura*, the Seventh Circuit stated "[w]e need to say something about the vocational expert's conclusion," and went on to broadly criticize the "source and validity of the statistics that vocational experts trot out in Social Security disability hearings," and deemed the VE's methodology as "preposterous," and

also questioned the outdated nature of the DOT. *Id.* at 507-08. However, the *Alaura* court did not offer what methodologies (underpinned by what principles) would satisfy the court, nor did it provide a brightline rule as to when remand was necessary based on defective VE methodology. *See id.*

District courts within the Seventh Circuit, while acknowledging the concerns of the Seventh Circuit, have identified the *Alaura* critiques as mere dicta, refusing to remand solely for challenges to a VE's use of the DOT. *Hoffman v. Colvin*, 2016 U.S. Dist. LEXIS 128086, at *19 (E.D. Wis. Sept. 20, 2016) (characterizing *Alaura's* discussion of VE testimony as "classic dicta"); *Sitter v. Berryhill*, 2017 U.S. Dist. LEXIS 75840, at *37 n.24 (E.D. Wis. May 17, 2017) ("the statement in *Alaura* appears to be dicta."); *Adamec v. Berryhill*, 2017 U.S. Dist. LEXIS 48799, at *20 (N.D. Ill. Mar. 31, 2017) ("[T]he Seventh Circuit's repeated criticism of the use of the DOT in VE testimony, while pointed, was merely dicta and does not merit remand."); *see also Boyles v. Acting Comm'r of the SSA*, 2018 U.S. Dist. LEXIS 39835, at *14-15 (N.D. Ind. Mar. 12, 2018) (collecting cases holding that *Alaura's* criticism of VE methodology was dicta). Plaintiff cites no case in which the Seventh Circuit reversed on this basis alone. Without clear direction from the Seventh Circuit as to the proper methodology for VE's to use in absence of an updated DOT method, the Court will continue to apply the deferential substantial evidence standard in reviewing a VE and ALJ's reliance on DOT.

Plaintiff's reliance on *Russell v. Berryhill*, No. 16-cv-1251-JPG-CJP, 2017 U.S. Dist. LEXIS 138145, at *11 (S.D. Ill. Aug. 28, 2017) is misplaced. Plaintiff argues that using the Bureau of Labor Statistics in combination with SkillTran is not a reliable foundation for a

VE to use to support her methodology. (Doc. 13 at 10). However, this case is easily distinguishable. In *Russell*, the district court reversed the decision denying benefits to a claimant in part because "the ALJ did not ask any questions about the SKillTRAN." *Russell*, 2017 U.S. Dist. LEXIS 138145 at *22.

Here, in contrast to *Russell*, the ALJ thoroughly inquired into the VE's use of SkillTran to cross-check her job estimates. (*See* R. 707-713; R. 719-728). The ALJ found both the VE's experience and explanations regarding her job number estimates to be reliable. (R. 654; R. 676). Though the VE's description did not reveal the precise mechanics and statistical model involved, it nevertheless constitutes a "reasoned and principled explanation," by the substantial evidence standard. *Chavez*, 895 F.3d at 970.

### 3. Post-Hearing Objections

Plaintiff argues the ALJ committed reversible error in failing to address Plaintiff's post-hearing objections. (Doc. 13 at 5-6). However, this argument is without support. Plaintiff relies on *Krell v. Saul*, 931 F.3d 582, 587 (7th Cir. 2019) for the assertion that "post-hearing submissions are an entitlement extended to SSA claimants and claimants are invited to do so." (Doc. 13 at 5). Plaintiff misrepresents the Seventh Circuit's holding in *Krell* as the court did not hold that post-hearing submissions are an entitlement. *Krell*, 931 F.2d at 587. Rather, while the Seventh Circuit stated it encourages ALJs to allow claimants to submit post-hearing argument, the court specifically stated "[w]e have never mandated that post-hearing challenges be allowed, and we decline to do so here." *Id.*

The record clearly shows the ALJ discussed Plaintiff's objections to the VE's testimony in detail because the post-hearing argument closely mirrors the objections

Plaintiff's counsel made during the hearing: (1) the specific vocational profile ("SVP") level of the inspector jobs testified to at step five and (2) alleged contradictory job numbers to the VE's SkillTran job numbers. (*See* R. 712-30; Doc. 13 at 6; Doc. 13-1 at 7-13; *see also* 13-2; 13-3). Even assuming Plaintiff had an absolute entitlement to submit a post-hearing objection, it is clear the ALJ did address Plaintiff's post-hearing arguments in the Decision. In her post-hearing objections, Plaintiff argues the VE "was unable to explain how SKillTRAN arrived at" the job number estimates. (Doc. 13-1 at 4). Plaintiff objected to the VE's testimony, as well as evidence in the record that allegedly shows the VE's numbers conflicted with the source used by the VE. (Doc. 13 at 5). Specifically, Plaintiff argues that had the VE entered individual DOT codes into SkillTRAN, there would have been conflicting numbers. (*Id.* at 6).

As for the first objection, Plaintiff argued the job of inspector should have been precluded in the ALJ's Decision because the RFC for that job requires frequent stooping and balancing whereas Plaintiff's RFC is for occasional stooping and balancing. (R. 661-74). The Appeals Council specifically addressed this contention in its November 2020 order, where it agreed with Plaintiff, and excluded the inspector job, DOT 529.587-018, but affirmed the ALJ's Decision stating this error was immaterial because of the remaining job positions of hand packer, DOT 753.687-038, and assembler, DOT 706.684-022. (R. 643-44). The two remaining positions account for 149,000 available positions in the national economy that Plaintiff can perform. (R. 675). The Court finds this error which the Appeals Council appropriately corrected to be harmless and undeserving of remand. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *see also Spiva v. Astrue*, 628 F.3d 346,

353 (7th Cir. 2010) (if it is predictable with great confidence that the agency will reinstate its decision on remand, then remanding is a waste of time).

Additionally, even if, as Plaintiff argues (Doc. 13 at 15), the hand packer position should be precluded because it uses a conveyor belt, which exposes Plaintiff to more than occasional work with moving parts, the 65,000 assembler jobs are still available to Plaintiff. (R. 643-44). Moreover, the VE testified to, and Plaintiff does not take issue with, alternative sedentary jobs Plaintiff could perform that do not involve contact with a conveyor belt: hand packer DOT 920.687-030 (20,000 available positions), assembler DOT 726.684-110 (18,000 available positions), and inspector DOT 739.687-182 (17,000 available positions). (R. 710).

The second objection in Plaintiff's post-hearing brief is based on her independent research allegedly producing different job estimates from that of the VE. (Doc. 13 at 6). Plaintiff appears to have taken an independent initiative by manually inputting DOT 753.687-038 (hand packer) and DOT 706.684-022 (assembler) into SkillTran, which contrasts with the method used by the VE. (R. 721-24; Doc. 13 at 6; Doc. 13-1 at 7-13; *see also* 13-2; 13-3). Plaintiff contends these alleged inconsistencies with the VE's job number estimates warrants a remand for further administrative proceedings. (Doc. 13 at 6).

A VE's job number estimate is just that – an estimate. *Chavez*, 895 F.3d at 968. A VE is neither required nor expected to administer her own surveys of employers to obtain a precise count of the number of positions that exist at a moment in time for a specific job. *Id*. The law acknowledges and respects these realities and limitations, for the agency's regulations do not mandate a precise count of job numbers. *See* 20 C.F.R. § 416.960(c)(2).

While Congress requires the Commissioner to support its findings with substantial evidence, *see* 42 U.S.C. § 405(g), this standard "affords the agency sufficient flexibility in approaching the approximation required at step five." *Chavez*, 895 F.3d at 968-69. Through her approach of selecting an industry, a generalized job type, considering functional limitations, and subsequently refining job estimates based on her expertise, the VE provided more than the "modicum of confidence" necessary for the ALJ to rely on her methodology. *Id*. Plaintiff's post-hearing objection does not undermine the method the VE used which was accepted as reliable by the ALJ. *Id*.

Plaintiff's post-hearing objection to the VE's methodology was also discussed thoroughly at the hearing. (*See* R. 707-713; R. 719-728). Therefore, the ALJ's reliance on the VE's opinion and her explanation of her methodology in reaching her job number estimates, (R. 676), is supported with substantial evidence.

## IV.    CONCLUSION

The Court has reviewed all of Plaintiff's arguments and concludes the ALJ properly applied the law and supported her Decision with substantial evidence. Plaintiff's Motion for Summary Judgment (Doc. 12) is DENIED and Defendant's Motion for Summary Affirmance (Doc. 19) is GRANTED. The Commissioner's decision denying benefits to Plaintiff Tina Tipsord is AFFIRMED. The Clerk of the Court is directed to enter judgment in favor of the Defendant Commissioner and against Plaintiff Tipsord.

ENTER: September 26, 2023

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDG